UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
------------------------------------------------------------------------X

JAMES GOODWIN,

                        *Plaintiff*,

       -against-

HCA HEALTHCARE and NICK PAUL,

                        *Defendants*.
------------------------------------------------------------------------X

**3:21-cv-1447**

**COMPLAINT**

    Plaintiff James Goodwin, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants HCA Healthcare ("HCA") and Nick Paul ("Mr. Paul"), as follows:

## NATURE OF THE ACTION

1. Plaintiff James Goodwin ("Plaintiff" or "Mr. Goodwin") seeks damages and costs against Defendants HCA and Mr. Paul, in violation of 29 USC § 2615 *et seq.* for Mr. Goodwin's termination in retaliation of his election to exercise his right to take leave under the Family Medical Leave Act ("FMLA"). Additionally, Plaintiff James Goodwin, seeks damages and costs against Defendant HCA, in violation of Americans with Disabilities Act ("ADA") 42 USC §12101 *et seq*.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over Plaintiff's claims arising under the FMLA and ADA.

3. Pursuant to 28 U.S.C. §1332, this Court has supplemental jurisdiction over Plaintiff's claims arising under the Texas Labor Code ("TLC"), as those claims are so related to

1

claims in the action within such original jurisdiction that they form part of the same case or controversy.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Texas, as a substantial part of the events giving rise to these claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5.      A charge of discrimination was filed with the Texas Worforce Commission ("TWC") on December 9, 2020 asserting claims for disabillity discrimination under the Americans with Disabilities Act ("ADA") 42 USC §12101 *et seq*.  The TWC has issued a right to sue letter dated June 18, 2021.

## TRIAL BY JURY

6.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.      At all times relevant hereto, Plaintiff was and is a resident of Collin County in the State of Texas.

8.      Upon information and belief, at all times relevant hereto, HCA was and is a limited partnership organized under the laws of the State of Tennessee with its principal place of business at 1 Park Plaza Nashville, Tennessee 37203.  Upon information and belief, HCA employs more than fifty (50) employees and is therefore covered by FMLA.

9.      Upon information and belief, at all times relevant hereto, Mr. Paul was and is a resident of Williamson County.

## STATEMENT OF FACTS

10. In this initial Complaint Plaintiff pleads six (6) causes of actions, one for FMLA retaliation and one for FMLA interferrence.

11. Mr. Goodwin was hired at HCA in March of 2012 as Director of Business Development for Medical City in Plano, Texas ("Medical City").  In the subsequent years, Mr. Goodwin's performance exceeded expectations resulting in positive end-of-year reviews, annual 2% merit increases in salary and annual bonuses.  Prior to Mr. Goodwin being charged with real estate developments for Medical City, he was given increased responsibility to oversee the Bariatrics and Robotic Surgery service lines; he was the only non-officer/Senior Team Member at HCA that had service line oversight.

12. In November of 2017, Mr. Goodwin was promoted from Director of Business Development to Director of Real Estate for Northern Texas, which resulted in a 10% merit increase in pay.

13. Mr. Goodwin received no training from his direct supervisor, Nick Paul ("Mr. Paul).  Mr. Paul told Mr. Goodwin after a meeting in August or September of 2017 "you'll learn as you go."  Without any training Mr. Goodwin undertook the responsibilities of Director of Real Estate, which included entering into agreements on behalf of HCA like AIA agreements.  AIA agreements are fairly common in Mr. Goodwin's position and he came across them often, as they act as an outline of job cost, job length, and the job itself between the contractor and the HCA.

14. Mr. Goodwin engaged in weekly meetings with Mark Whitely, Senior Vice President of Network Assets, to discuss all of Mr. Goodwin's projects (which at any given time could be in excess of fifty (50)).  Mr. Goodwin had quarterly meetings with Wayne Martin, Division CFO, and had quarterly meetings with Erol Akdamar, Division President.  Mr.

Goodwin also had regular calls with his supervisor, Mr. Paul, and others on the HCA corporate real estate team.

15. Having been given routine authority to approve budgets, Mr. Goodwin signed an AIA agreement between HCA and the contractor, Abstract Contracting Company, similar to agreements he had signed in the past and similar to those that other director-level employees had signed on behalf of HCA.

16. Mr. Paul came to Dallas to visit Mr. Goodwin on March 5, 2020. Mr. Paul expressed to Mr. Goodwin that he felt like he was not getting ample support at the division level, so Mr. Goodwin suggested that he begin working at the nursing training center because there were vacant offices for usage. Mr. Paul was concerned that Mr. Goodwin's cubicle at the Division office was not conducive to his job responsibilities.

17. During the week of May 4, 2020, it was mentioned to Mr. Goodwin that the McKinney Airport Project was over budget. For the first time, Mr. Paul instructed Mr. Goodwin that he could not sign an AIA, even though he had been given authority to sign them and had signed them in the past without incident.[1] It became clear to Mr. Goodwin that Mr. Paul was making false allegations about Mr. Goodwin. These false accusations of wrongdoing had the effect of exacerbating on Mr. Goodwin's medical conditions. As such, Mr. Goodwin was compelled to exercise his rights by seeking the protection under federal law.

18. Following Mr. Paul's false accusations, active efforts to sabotage his career and circumstances arising out of bona-fide medical conditions, Mr. Goodwin's medical condition

---

[1] For example: Mr. Goodwin signed an AIA for the Medical City IT&S, a project that was five (5) times the size of McKinney Airport Project.

4

worsened and he elected to take a FMLA leave of absence and short-term disability starting May 20.

19. Thereafter, Mr. Goodwin complied with all necessary policies and procedures regarding his leave by submitting the requisite paperwork to HCA's human resources. In compliance, Mr. Goodwin called Mr. Paul in accordance to his FMLA/disability paperwork, which says Mr. Goodwin will check in with his supervisor.

20. Shortly after his leave began, it became clear that HCA planned to terminate his employment due to his disability and related use of the FMLA.

21. After email correspondence between HCA and Mr. Goodwin, HCA erroneously came to the conclusion that Mr. Goodwin was returning to work on July 20, whereupon HCA illegally terminated him July 24, despite Mr. Goodwin being approved for FMLA leave through September 1.

22. At no time did HCA engage in the interactiove process to determine, what if any, acommidation Mr. Goodwin would need upon returning to work.

23. At the time of the illegal termination, Mr. Paul told Mr. Goodwin that corporate real estate "doesn't have much going on" and Mr. Paul "didn't have anything for him to work on," even though projects continued and no one else was being terminated who was not on FMLA.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### FMLA Retaliation

24. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

25. Plaintiff was qualified for, and requested, leave pursuant to the Family and Medical Leave Act ("FMLA") from HCA. HCA violated Plaintiff's rights under the FMLA by

restraining and denying him the exercise of or the attempt to exercise his rights under the FMLA and by retaliating against him following a medical leave of absence under the FMLA.

26. Plaintiff seeks all rights and remedies available to him including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

## SECOND CAUSE OF ACTION
### FMLA interference

27. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

28. Plaintiff was qualified for, and requested, leave pursuant to the Family and Medical Leave Act ("FMLA") from HCA. HCA violated Plaintiff's rights under the FMLA by interfering with the exercise of or the attempt to exercise his rights under the FMLA and by retaliating against him following a medical leave of absence under the FMLA.

29. Plaintiff seeks all rights and remedies available to him including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

## THIRD CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the ADA

30. Plaintiff hereby realleges and incorporates each, and every allegation contained in paragraphs 10 through 23 with the same force as though separately alleged herein.

31. The ADA requires employers to provide disabled employees with a reasonable accommodation.

32. Defendant interfered with Plaintiff's right to a reasonable accommodation by unlawfully terminating his employment.

33. As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial economic

and non-economic damages, including, but not limited to, back pay and emotional distress and suffering, all in amounts to be determined at trial.

34. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### FOURTH CAUSE OF ACTION
### Retaliation in Violation of the ADA

35. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 10 through 23 with the same force as though separately alleged herein.

36. The ADA prohibits employers from retaliating against employees for exercising, or attempting to exercise, their rights guaranteed by the ADA.

37. Plaintiff attempted to exercise his rights by seeking an accommodation for his disability.

38. Defendant retaliated against Plaintiff for reasonable accommodation by unlawfully terminating his employment.

39. As a direct and proximate consequence of Defendant's illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, and emotional distress and suffering, all in amounts to be determined at trial.

40. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### FIFTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation and engage in the interactive process in Violation of the TLC

41. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 10 through 23 with the same force as though separately alleged herein.

42. The TLC states that an employer shall not "fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee."

43. At all relevant times, Plaintiff was qualified to perform his job responsibilities. He could perform the essential functions of his job with reasonable accommodations.

44. efendant refused to provide Plaintiff with a reasonable accommodation for his disability.

45. As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

46. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SIXTH CAUSE OF ACTION
### Unlawful Termination in Violation of the TLC

47. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 10 through 23 with the same force as though separately alleged herein.

48. The TLC mandates that no employer discriminate against a qualified individual on the basis of disability in regard to the terms and conditions of his or her employment.

49. Defendant unlawfully terminated Plaintiff because of his disability.

50. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

51. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## **REQUESTS FOR RELIEF**

**WHEREFORE**, the individually named Plaintiff respectfully requests that this Court grant the following relief:

A. on Plaintiff's first claim, damages to be determined at trial;

B. on Plaintiff's second claim, damages to be determined at trial;

C. an award of pre-judgment and post-judgment interest;

D. an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

E. such other and further relief as this Court deems appropriate.

Dated: Dallas, Texas
       June 18, 2021

By: _____
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, LLP.
*Attorney for Plaintiff*
244 Fifth Avenue, Suite H211
New York, New York 10001
(646) 248-2288
wharman@theharmanfirm.com